**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

DIGI PORTAL LLC,

     Plaintiff,

  v.

ALBERTSONS COMPANIES, INC.,

    Defendant.

C.A. NO. 1:20-cv-01433-MN

JURY TRIAL DEMANDED

**ALBERTSONS COMPANIES, INC.'S OPENING BRIEF IN SUPPORT OF ITS
<u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>**

FISH & RICHARDSON PC

Jeremy D. Anderson (#4515)
222 Delaware Ave., 17th Floor
P.O. Box 1114
Wilmington, DE 19801
(302) 652-5070 Telephone
(302) 652-0607 Facsimile
janderson@fr.com

Neil J. McNabnay, *pro hac vice* to be filed
Ricardo J. Bonilla, *pro hac vice* to be filed
Collin J. Marshall, *pro hac vice* to be filed
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
mcnabnay@fr.com
rbonilla@fr.com
cmarshall@fr.com

*Attorneys for Defendant
Albertsons Companies, Inc.*

Dated:  December 17, 2020

# Table of Contents

I.     NATURE AND STAGE OF THE PROCEEDINGS ........................................................... 1

II.    SUMMARY OF THE ARGUMENT ............................................................................... 1

III.   STATEMENT OF FACTS ............................................................................................ 2

IV.    LEGAL STANDARDS ................................................................................................. 5

     A.    The Complaint should be dismissed under Rule 12(b)(6). ....................................5

     B.    Patent eligibility under 35 U.S.C. § 101 is a threshold inquiry. .............................5

V.     ARGUMENT .............................................................................................................. 6

     A.    The '227 Patent is not patent-eligible. ...................................................................7

          1.    *Alice* Step 1: The '227 Patent is directed to the abstract idea of providing customized information to a user. ................................................7

          2.    *Alice* Step 2: The '227 Patent does not contain an inventive concept sufficient to confer patent eligibility........................................................13

          3.    The '227 Patent's dependent claims add nothing inventive. ....................15

     B.    The Cache Patents are invalid under § 101...........................................................15

          1.    Claim 1 of the '854 Patent is representative. ...........................................15

          2.    *Alice* Step 1: The Cache Patents are directed to the abstract idea of providing customized information to a user *from the most convenient location.* ..................................................................................16

          3.    *Alice* Step 2: The Cache Patents do not contain an inventive concept sufficient to confer patent eligibility........................................................18

          4.    The Cache Patent's dependent claims add nothing inventive....................20

VI.    CONCLUSION........................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*3G Licensing, S.A. v. HTC Corp.*,
  No. 18-1485-LPS-CJB, 2019 WL 2904670 (D. Del. July 5, 2019)...................................7, 18

*Affinity Labs of Texas, LLC v. DirecTV, LLC*,
  838 F.3d 1253 ...........................................................................................................10, 12

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014).......................................................................................... *passim*

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................................5

*Baggage Airline Guest Servs., Inc. v. Roadie, Inc.*,
  351 F. Supp. 3d 753 (D. Del. 2019) (Andrews, J.) .............................................7, 16

*Bilski v. Kappos*,
  561 U.S. 593 (2010)........................................................................................................6

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
  778 F. App'x 882 (Fed. Cir. 2019) ...............................................................................9

*Collarity, Inc. v. Google Inc.*,
  No. 11-1103-MPT, 2015 WL 7597413 (D. Del. Nov. 25, 2015) ...........................6

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014)...................................................................................12

*Customedia Techs., LLC v. Dish Network Corp.*,
  951 F.3d 1359 (Fed. Cir. 2020)............................................................... *passim*

*Diamond v. Chakrabarty*,
  447 U.S. 303 (1980).......................................................................................................6

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016)...................................................................................13

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016)...................................................................................10

*Gibbs v. Coupe*,
  192 F. Supp. 3d 503 (D. Del. 2016) (Robinson, J.) .................................................5

*Hyper Search, LLC v. Facebook, Inc.*,
  No. 17-1387-CFC-SRF, 2018 WL 6617143 (D. Del. Dec. 17, 2018)....................9, 12, 13, 14

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015)..................................................................1, 8, 14

*Internet Patents Corp. v. Active Network, Inc.*,
   790 F.3d 1343 (Fed. Cir. 2015)..........................................................................9, 13

*In re Morsa*,
   809 F. App'x 913 (Fed. Cir. 2020) ...........................................................................9

*Personalized Media Commc'ns, LLC v. Amazon.Com, Inc.*,
   161 F. Supp. 3d 325 (D. Del. 2015) (Andrews, J.) ............................................9, 14

*PPS Data, LLC v. Jack Henry & Assocs., Inc.*,
   No. 2:18-cv-00007-JRG, 2019 WL 1317286 (E.D. Tex. Mar. 21, 2019)..............16

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018)......................................................................7, 13, 16

*SynKloud Techs., LLC v. HP Inc.*,
   No. 19-1360-RGA, 2020 WL 5798725 (D. Del. Sept. 29, 2020)..................9, 11, 12

*In re TLI*,
   823 F.3d at 612 ....................................................................................................14

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017).............................................................................10

*Versata Software, Inc. v. NetBrain Techs., Inc.*,
   No. 13-676-LPS-CJB, 2015 WL 5768938 (D. Del. Sept. 30, 2015) ............... *passim*

*Victaulic Co. v. Tieman*,
   499 F.3d 227 (3d Cir. 2007)...................................................................................5

*Visual Memory LLC v. NVIDIA Corp.*,
   867 F.3d 1253 (Fed. Cir. 2017)..........................................................................10, 11

*WhitServe LLC v. Dropbox, Inc.*,
   No. 18-665-CFC, 2019 WL 3342949 (D. Del. July 25, 2019) .........................13, 17

**Statutes**

35 U.S.C. § 101 ............................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. 12(b)(6)..................................................................................................5

## I.    NATURE AND STAGE OF THE PROCEEDINGS

On October 26, 2020, Plaintiff Digi Portal LLC filed this lawsuit accusing Defendant Albertsons Companies, Inc. of infringing U.S. Patent Nos. 5,983,227; 7,171,414; 7,565,359; 8,352,854; and 9,626,342 (the "Asserted Patents"), all titled "Dynamic Page Generator." (D.I. 1 at ¶¶ 27, 43, 59, 77, 90.) Digi Portal accuses Albertsons's website, www.albertsons.com, of infringing at least Claim 2 of the '227 Patent, claims 1 and 3 of the '414 Patent, Claim 10 of the '359 Patent, claims 1, 2, 8, 9, and 15 of the '854 Patent, and Claim 1 of the '342 Patent. (*Id.*)

## II.    SUMMARY OF THE ARGUMENT

This case should be dismissed because the Asserted Patents describe something the Federal Circuit has already held to be an ineligible abstract idea: "a generic web server with attendant software, tasked with providing web pages to and communicating with the user's computer." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015) [hereinafter *Capital One*] (holding these types of claims patent ineligible). The '227 Patent's claims are directed to the abstract idea of providing customized information to a user. The other four Asserted Patents (the "Cache Patents") recite an additional limitation for "recycling old information" if it is available, something Magistrate Judge Burke has previously recommended finding does not confer eligibility. *Versata Software, Inc. v. NetBrain Techs., Inc.*, No. 13-676-LPS-CJB, 2015 WL 5768938, at *21 (D. Del. Sept. 30, 2015). The Asserted Patents all claim receiving, storing, processing, and providing customized web pages using generic computers arranged in a conventional way performing well-known functions. The Asserted Patents generally describe the human activity of providing customized information "wherein a computer is merely used as a tool," not "an improvement in the functioning of the computer itself." *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020). Federal courts have held such claims ineligible as directed to abstract ideas, and these claims deserve the same treatment.

The claims of the Asserted Patents also do not contain an inventive concept. The claims recite steps for providing customized information to a user, and "each step does no more than require a generic computer to perform generic computer functions." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 225 (2014). The Asserted Patents describe existing technology and known methods for providing customized information to a user. The additional, "generic step" of recycling information recited in the Cache Patents "cannot impart patent eligibility." *Versata*, 2015 WL 5768938, at \*22. All claims lack the requisite specificity to achieve eligibility, and neither they nor the specification describes **how** to implement the claims in any particular or inventive manner. The Asserted Patents' claims are therefore invalid under § 101.

## III.    STATEMENT OF FACTS

The central purpose of the Asserted Patents is providing customized information to a user by serving customized web pages—a concept that the applicants admit is "known" in the prior art. (D.I. 1-2 ("'227 Patent") at 1:30–46, 1:61–2:3.)[1] This customized information includes "live data," which is a user's "custom selection of stock quotes, news headlines, sports scores, weather, and the like." (*Id.* at 2:3–8.) One "known" system for providing customized information is a page server with a program that queries individual, "live data"-providing servers and, with this live data, "generates the custom page and returns it to the user" (the "Program Method"). (*Id.* at 1:31–41.) Another "known" approach is "continually streaming" live data, which "is stored local to the user" for use when the user requests a custom page (the "Local Memory Method"). (*Id.* at 1:47–53.)

The applicants noted these "known systems do not scale well," yet their purported invention is a "custom page server" merely applying these "known systems" on generic components arranged in a conventional way and performing routine functions. (*Id.* at 1:30–31,

---

[1] The Asserted Patents are related and share the same specification. All citations are to the '227 Patent unless otherwise noted.

1:61–62.) Like the Program Method, the alleged invention is a "process [that] is executed on a page server for every request" for a custom page. (*Id.* at 1:66–67.) "User preferences," which are the user's personal "selection" of live data, are combined in a generic template to "generate" a "user template." (*Id.* at 1:61–2:3, 5:42–43.) The page server generates custom pages using live data "to fill [the] user template." (*Id.* at 2:3–5, 3:62–64.) Like the Local Memory Method, "[t]he live data [is] stored in a local, shared memory" in the page server. (*Id.* at 2:8–11, 4:24–27.) One element, exclusive to the Cache Patents' claims, stores the user-specific "template programs" in a temporary data store known as a "cache" if the user has not recently requested custom information from the page server. (*Id.* at 1:67–2:3, 4:40–53; *see also id.* at Abstract, 3:51–61, FIG. 2.)

The applicants touted basic speed and efficiency benefits from caching user templates, (*see id.* at 1:67–2:3, 3:65–4:3, 4:40–53, 5:15–24), and using "local, shared memory" for storing live data, (*see id.* at 2:8–11, 3:65–4:39). But the applicants did not claim to have invented cache or shared memory, or even an unconventional manner of using them. The Asserted Patents, for example, do not describe a specific implementation of cache memory—it is represented as a flowchart symbol in Figure 2. (*See id.* at FIG. 2.) Shared memory in generic "RAM" (random access memory) used for its conventional purpose—quickly storing data. (*Id.* at Abstract, 2:11–14.) And the applicants did not, and could not, explain how the claimed system of using a program to generate custom web pages is conceptually different from the Program Method, or how using local memory to store live data is conceptually distinct from the Local Memory Method.

The Patent and Trademark Office ("PTO"), in the first of many rejections, denied the applicants' claim that "caching templates" and using "a shared memory and a data structure for storing dynamic information" was inventive. (Ex. A, Dec. 24, 1998 Non-final Rej., A3–A4.)[2] And

---

[2] This "caching templates" limitation was subsequently removed from the '227 Patent's claims.

the Asserted Patents' claims recite results-focused, functional steps for providing customized information to a user, as is evident from the bolded limitations in Claim 2 of the '227 Patent:

> 2. Using a page server, a method of providing real-time responses to **user requests for customized pages**, the method comprising the steps of:
>
> **obtaining** user preferences, wherein a user's user preferences indicate items of interest to that user;
>
> **obtaining** real-time **information** from information sources;
>
> **storing** the real-time **information** in a storage device;
>
> **combining** the user preferences for the user and a template **to form** a template program specific to the user;
>
> **receiving**, from a user and at the server, **a user request for a customized page** customized according to the user preferences;
>
> **executing** the template program specific to the user **using** the real-time **information** stored in the storage device as input to the template program **to generate** the customized page; and
>
> **providing** the user with the customized page, wherein the steps of **executing** and **providing** are performed in real-time response to receipt of the user request in the step of receiving and wherein the customized page includes at least one item of real-time **information selected** from the storage device.

('227 Patent at Cl. 2 (emphasis added).) All claims recite similar steps for providing customized information to a user, but not *how* to achieve those results in any inventive way.

The specification describes the claimed limitations as generic components performing routine functions and arranged in a conventional manner. It generally describes implementing the claimed invention on "servers," "browsers," "databases," "network appliances," "caches," "storage devices," and "shared memory." (*Id.* at 2:52–5:7.) These components are described as either existing, off-the-shelf elements or by generic terms. For example, the "user configuration database," which contains the user preferences, is a "Unix file structure which stores each user configuration in a text file." (*Id.* at 3:39–41; *see also id.* at 1:62–2:3, 3:49–55.) The "page servers,"

which are used to generate the customized web pages, are "microcomputers running the Unix®
operating system." (*Id.* at 3:35–41.) This generic equipment is connected using well-known
TCP/IP networks and "HTTP (HyperText Transport Protocol) messaging or other protocols [that
are] well known . . . ." (*Id.* at 2:58–3:21, 3:35–42.) The Asserted Patents do not claim or disclose
any improved memory system, so their claims are ineligible under *Alice*.

## IV.    LEGAL STANDARDS

### A.    The Complaint should be dismissed under Rule 12(b)(6).

A party may move to dismiss a complaint that fails to state a claim upon which relief can
be granted under Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a
complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is
plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v.
Twombly*, 550 U.S. 544, 570 (2007)). A "plaintiff must allege facts that 'raise a right to relief above
the speculative level on the assumption that the allegations in the complaint are true (even if
doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (citation omitted).

In deciding a Rule 12(b)(6) motion, "[t]he court may consider the pleadings, public record,
orders, exhibits attached to the complaint, and documents incorporated into the complaint by
reference." *Gibbs v. Coupe*, 192 F. Supp. 3d 503, 506 (D. Del. 2016) (Robinson, J.). Although
factual allegations are taken as true, legal conclusions are given no deference—those matters are
left for the court to decide. *See Ashcroft*, 556 U.S. at 678 (noting "the tenet that a court must accept
as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

### B.    Patent eligibility under 35 U.S.C. § 101 is a threshold inquiry.

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any
new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. The
law also recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena,

and **abstract ideas**." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980) (emphasis added). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski v. Kappos*, 561 U.S. 593, 611–12 (2010). In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea. *Alice*, 573 U.S. at 217. Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (quotation omitted).

"Whether a claim is drawn to patent-eligible subject matter under 35 U.S.C. § 101 is a threshold inquiry to be determined as a matter of law by the district court in establishing the validity of the patent." *Collarity, Inc. v. Google Inc.*, No. 11-1103-MPT, 2015 WL 7597413, at *11 (D. Del. Nov. 25, 2015) (internal quotations omitted) (rejecting the argument that "any patent issued post-Alice [sh]ould be inoculated from invalidity under Section 101").

## V.    ARGUMENT

The claims of the Asserted Patents are invalid under 35 U.S.C. § 101 because they fail both prongs of the *Alice* test. Resolving this issue does not require discovery or formal claim construction. Because the Asserted Patents' claims are invalid, Digi Portal cannot state a claim upon which relief may be granted. Albertsons, therefore, respectfully requests that the Court grant this motion and dismiss this case with prejudice.

## A.      The '227 Patent is not patent-eligible.

The '227 Patent is like a simpler version of the Cache Patents; unlike the Cache Patents, it does not contain any claim limitations for storing user templates, so it is analyzed separately.[3]

### 1.      *Alice* Step 1: The '227 Patent is directed to the abstract idea of providing customized information to a user.

The first step of the Alice framework asks whether the claims are "directed to" an abstract idea. *Alice*, 573 U.S. at 219. This step "looks at the 'focus' of the claims," i.e., "their 'character as a whole,'" to determine whether the claims are drawn to an abstract idea. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) (citations omitted). The "focus" of representative Claim 2[4] is the fundamental practice of providing customized information to a user, and it achieves this focus by receiving, storing, processing, and sending data using generic computer components.

#### (a)      Providing customized information to a user is an abstract idea.

The '227 Patent recites the abstract idea of providing customized information to a user as a series of routine steps: (1) receiving user preferences; (2) receiving and storing real-time information (i.e., live data); (3) filling in a general template with the user preferences to create a

---

[3] Judge Stark previously found that the abstract idea of "providing targeted information, including advertising to a user" was not what the '854 Patent (one of the Cache Patents) was directed to. *3G Licensing, S.A. v. HTC Corp.*, No. 18-1485-LPS-CJB, 2019 WL 2904670, at *2 (D. Del. July 5, 2019) [hereinafter *Quotient*] (denying the § 101 challenge without prejudice). Judge Stark suggested, "based on the record" before the Court, that there could be an inventive concept in a limitation in the '854 Patent related to storing user templates. *Id.* This limitation is notably absent from the '227 Patent's claims, rendering *Quotient* inapposite to the '227 Patent. The Cache Patents, with a properly characterized abstract idea and different record, are addressed below. *See infra* Section V.B.

[4] Courts may analyze representative claims in the § 101 analysis where the claims are "substantially similar and linked to the same abstract idea." *Baggage Airline Guest Servs., Inc. v. Roadie, Inc.*, 351 F. Supp. 3d 753, 758 (D. Del. 2019) (Andrews, J.) (quotation omitted). As discussed below, all claims of the '227 Patent are directed to the same abstract idea and are ineligible. *See infra* Section V.A.3.

template program; (4) receiving a user's request for customized information (i.e., a custom web page); (5) filling in the user's template with live data to generate the custom page; and (6) providing the customized information to the user. (*See* '227 Patent at Cl. 2; *see also id.* at 1:62–66, 2:5–11, 3:22–24, 3:59–64, FIG. 2.)

This practice of "information tailoring is 'a fundamental . . . practice long prevalent in our system,'" dating back to newspapers and television advertising. *Capital One*, 792 F.3d at 1369–70 (quoting *Alice*, 573 U.S. at 219). The *Capital One* court held ineligible claims that "generally relate[d] to customizing web page content as a function of navigation history and information known about the user." *Id.* at 1369. The representative claim recited "an interactive interface," which the plaintiff characterized as "software" that "tailors the web page to the specific individual based on the profile." *Id.* at 1370. But the court determined the limitation "simply describes a generic web server with attendant software" and that the claim was directed to "tailoring content" based on "personal characteristics in a user profile . . . ." *Id.* at 1369.

Claim 2 of the '227 similarly claims "a page server" customizing web page content that includes a "template program" personalized by "user preferences." ('227 Patent at Cl. 2.) The claimed method "execut[es] the template program specific to the user" to provide customized information. (*Id.* at 1:61–66, 5:42–43, Cl. 2.) There is no meaningful distinction between the "web server" and "interactive interface" claimed in *Capital One* and the "page server" and "template program" claimed in the '227 Patent. Both describe a page server with attendant software to provide customized information to a user. Thus, like the claims held ineligible in *Capital One*, the '227 Patent's claims are directed to an abstract idea because "[p]roviding this minimal tailoring . . . is an abstract idea." *Id.* at 1369. And *Capital One* is just one of many cases from the Federal Circuit and this Court holding that providing customized information to a user is an

abstract idea. *See, e.g.*, *In re Morsa*, 809 F. App'x 913, 917 (Fed. Cir. 2020) (holding that a claim directed to a method of providing customized advertisements to a user based on the user's demographic information was an abstract idea); *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 888 (Fed. Cir. 2019) (similar); *Customedia Techs.*, 951 F.3d at 1362–63 (holding that the claims were "directed to the abstract idea of using a computer to deliver targeted advertising to a user"); *Personalized Media Commc'ns, LLC v. Amazon.Com, Inc.*, 161 F. Supp. 3d 325, 330 (D. Del. 2015) (Andrews, J.) (finding a claim was "directed to the abstract idea of using personal information to create a customized presentation").

Claim 2 couches the method in terms of generating the customized information by use of a template or form, but courts have found that claims directed to that idea are abstract. *See, e.g.*, *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1347–48 (Fed. Cir. 2015) ("[T]he idea of retaining information in the navigation of online forms" in a dynamic web page is an abstract idea.) This Court and other district courts "have held that patents directed to using templates to collect or generate documents, such as web pages, are abstract ideas." *Hyper Search, LLC v. Facebook, Inc.*, No. 17-1387-CFC-SRF, 2018 WL 6617143, at *6 (D. Del. Dec. 17, 2018) (holding that claims directed to creating a webpage based on a template generated using user-specific information was directed to an abstract idea) (collecting cases); *see also SynKloud Techs., LLC v. HP Inc.*, No. 19-1360-RGA, 2020 WL 5798725, at *11 (D. Del. Sept. 29, 2020) (claims directed to "the process of formatting emails using templates for delivery to a printer" are abstract). Claim 2 is thus directed to an abstract idea.

### (b) The '227 Patent's claims are not directed to a specific improvement in a computer's capabilities.

Claim 2 recites steps for "obtaining," "storing," "combining," "receiving," and "executing," and ultimately "providing" customized information to a user, but it does "not

9

sufficiently describe how to achieve these results in a non-abstract way." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017); *see also Affinity Labs of Texas, LLC v. DirecTV, LLC*, 838 F.3d 1253, 1258–59 (reciting "the function," but "not a particular way of performing that function" made the claims ineligible). The claimed steps recite results without meaningful direction and are ineligible.

The claimed invention does not "improve the functioning of the computer itself," *Alice*, 573 U.S. at 225, by, for example, improving "the way a computer stores and retrieves data in memory," *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016), or providing "an enhanced computer memory system," *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259 (Fed. Cir. 2017). In *Enfish*, the Federal Circuit distinguished the claims from others that were "simply adding conventional computer components to well-known business practices," holding instead that they were "directed to a specific improvement to the way computers operate." *Enfish*, 822 F.3d at 1336. In particular, the unconventional structure of the database resulted in "increased flexibility, faster search times, and smaller memory requirements." *Id.* at 1337. In *Visual Memory*, the unconventional "programmable operational characteristics" of the memory system could "outperform a prior art memory system that is armed with a cache many times larger" than it. *Visual Memory*, 867 F.3d at 1259.

Unlike *Enfish*, nothing in Claim 2 of the '227 Patent shows any unconventional methodology that would amount to a "specific improvement in the way computers operate." *Enfish*, 822 F.3d at 1336. The '227 Patent is not directed toward a "specific asserted improvement in computer capabilities"; it is instead focused "on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id.* Unlike *Visual Memory*, the '227 Patent does

not provide an "enhanced computer memory system" where the functioning of the memory components themselves are improved upon. *Visual Memory*, 867 F.3d at 1259.

Neither the claims nor the specification supports a specific improvement stemming from the recitation of a "template program" or "shared memory." The '227 Patent does not describe how the claimed system is an improvement upon the "known systems" of using programs to query individual servers or locally storing live data. ('227 Patent at 1:31–41, 1:47–53.) Claim 2 does not describe any improvement to the functionality of a computer itself, but instead merely describes the use of the computer as a "tool" to perform the claimed method. *Customedia,* 951 F.3d at 1363-64 (rejecting argument that "by providing a reserved and dedicated section of storage, the claimed invention improves the data delivery system's ability to store advertising data, transfer data at improved speeds and efficiencies, and prevent system inoperability due to insufficient storage" because it "merely improves the abstract concept of delivering targeted advertising using a computer only as a tool"); *SynKloud*, 2020 WL 5798725, at *12 (The patent "does not describe any specific configuration," but "recites generic steps to place the various elements of an email into a template for printing, with the use of a computer." (quotations omitted)).

Even where the specification, as here, identifies "generic speed and efficiency improvements," this is insufficient for the idea to be non-abstract. *Customedia*, 951 F.3d at 1365. The applicants' "realization" that information can be stored on "a shared memory closely coupled to a page generator" only acknowledges the well-known capability of generic RAM to read and write information "faster" than disk memory. (*Id.* at 2:11–14, 4:3–39.) The '227 Patent does not allege an improvement in the functioning of memory storage itself. (*See id.*) And the PTO rejected the notion that the recitation of shared memory in the claims was an improvement in computers. (*See* Ex. A at A3.)

Digi Portal's assertion of inventiveness is not only incorrect, it is also unsupported because neither the claims nor the specification provides support for an improved page server. The claims recite only generic components performing routine functions arranged in a conventional manner. (*See id.* at 2:52–5:7 (describing the "page servers" as "microcomputers" running off-the-shelf operating systems).) *Hyper Search* is instructive here. *Hyper Search*, 2018 WL 6617143, at *9. The patents claimed "an improved home page creating system" that overcame existing problems by "reduc[ing] the time required for sending a home page" and "creat[ing] a home page easily." *Id.* at *6. This Court noted that, even if it were to conclude that the increased speed and efficiency "was an improvement to computer functionality, such improvements would be benefits that flow from performing an abstract idea in conjunction with well-known computer functionalities." *Id.* at *8 (quotations omitted). The generic speed and efficiency benefits described in the '227 Patent are similarly benefits flowing from using templates in conjunction with the well-known functionalities of RAM memory. (*See* '227 Patent at 2:11–14, 4:13–17.) Like the claims in *Hyper Search*, the claims here are directed to an abstract idea because using templates to make customized pages is an abstract idea. 2018 WL 6617143, at *9.

### (c)   The '227 Patent's claims are untethered to a specific implementation.

Claim 2 is like those claims held ineligible by the Federal Circuit where "the claimed invention is entirely functional in nature" and "[n]othing in the [patent figures] or the text of the specification provides any details regarding the manner in which the invention accomplishes the recited functions." *Affinity Labs*, 838 F.3d at 1260. All of the claimed steps are classic examples of abstract ideas, particularly when all the claims require is to "do it on a computer." *Hyper Search*, 2018 WL 6617143, at *6; *see also Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (holding claims for "collecting," "recognizing,"

and "storing" data "in a memory" were abstract); *WhitServe LLC v. Dropbox, Inc.*, No. 18-665-CFC, 2019 WL 3342949, at *5 (D. Del. July 25, 2019) (using basic computing elements to perform basic processes was "not enough to render the claims nonabstract"). By claiming these common steps in functional terms using only generic computing elements, Claim 2 of the '227 Patent claims an abstract idea.

When a patent claim is directed to an end-result, "[i]nquiry . . . must turn to any requirements for *how* the desired result is achieved." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016) (emphasis in original). Claim 2 does not contain any of the how, and it therefore lacks the specificity required to confer eligibility. *See, e.g., SAP*, 898 F.3d at 1167 (stressing that, as "reflected repeatedly in our cases," a claimed invention must embody a concrete solution to a problem having "the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it"). Accordingly, Claim 2 fails Alice step one.

### 2. *Alice* Step 2: The '227 Patent does not contain an inventive concept sufficient to confer patent eligibility.

Because the claims are direct to an abstract idea, they can only be patent-eligible if they recite "an 'inventive concept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217–18 (internal quotations omitted).

Considered individually, the claim elements of the '227 Patent only recite generic components performing routine functions. Using a template program to generate a dynamic web page is insufficient to "transform" an abstract idea, as this is "merely [a] generic data collection step[] or sitting the ineligible concept in a particular technological environment." *Internet Patents*, 790 F.3d at 1349; *see also Hyper Search*, 2018 WL 6617143, at *9 ("Generic descriptions of computer components and functions . . . do not rise to the level of inventive concept."). Methods

for providing customized information were "known." ('227 Patent at 1:31–53.) The alleged invention may be implemented with only a generic "browser," "servers," "network appliance," and "database." (*Id.* at 2:52–3:47.) The page server contains basic hardware like a nondescript "microprocessor," "shared memory," and "a cache," performing routine functions. (*Id.* at 3:35–41, 3:59–61.) Everything about Claim 2 and the '227 Patent as a whole is ordinary.

Considered as an ordered combination, the '227 Patent allegedly generates custom front pages "much more quickly" because it uses "shared memory as compared with using servers and [a] page template." *(Id.* at 4:13–17.) What the patent describes, however, is the natural benefit of using generic RAM to store information. (*See id.* at Abstract, 1:47–53; 2:11–14 (noting how local storage reduces the "attendant delay" of providing custom pages).) And storing data is a "generic computer function . . ." *In re TLI*, 823 F.3d at 612. The '227 Patent describes no unique implementation or otherwise inventive use of shared memory. (*See* Ex. A at A3.)

The claimed template program also fails to provide an inventive concept. Because the template program code provided in the Appendices is exemplary, ('227 Patent at 5:12–15, 5:50–51), the '227 Patent encompasses any program that provides a customized page by executing a program with live data, similar to the prior art Program Method. (*Id.* at 1:62–66, 3:51–53.) There is nothing "inventive" about using a server to provide a customized user page or using RAM to store data. *See Capital One*, 792 F.3d at 1365 ("[M]erely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea."). This Court agrees that "[t]he improved speed or efficiency inherent with applying an abstract idea on a computer does not provide an inventive concept" and thus fails *Alice* Step 2. *Personalized Media Commc'ns*, 161 F. Supp. 3d at 338.

### 3.     The '227 Patent's dependent claims add nothing inventive.

The dependent claims of the '227 Patent add limitations further directed to the abstract idea of providing customized information to a user, but they do not include the specificity necessary to claim patent-eligible subject matter. They do not include anything other than generic components and processes such that they fail to contain an inventive concept. Claims 3 through 9, which depend from Claim 2, relate to the type of "real-time information" to be displayed (such as sports and the weather), storing it in memory capacity, as well as server capacity, temporal constraints and default user configurations based on demographic information. (*See* '227 Patent at cls. 3–9.) These claims merely describe different aspects of the same abstract concept, with no added technical specificity.

Likewise, independent Claim 1 claims a system for carrying out the method claimed in claims 2–9, and is specific to providing sports information. (*See id.* at Cl. 1.) It is directed to the abstract idea of providing customized information to a user for the same reason as Claim 2. The claims of the '227 Patent cannot confer patent eligibility because they do not overcome the fact that the claims recite the long-standing practice of providing customized information to a user.

### B.     The Cache Patents are invalid under § 101.

The Cache Patents claim the same concept as the '227 Patent but include an additional limitation requiring the template program to come from "one of at least two locations" based on "the frequency of the user request." (D.I. 1-1 ("'854 Patent") at Cl. 1.) The Cache Patents' claims are, therefore, directed to the abstract idea of providing customized information **from the most convenient location**. And this additional storage limitation lacks an inventive concept sufficient to confer eligibility.

### 1.     Claim 1 of the '854 Patent is representative.

Claim 1 of the '854 Patent is representative of the independent claims of the Cache Patents, which can be evaluated collectively for purposes of the § 101 inquiry because they are all

"substantially similar and linked to the same abstract idea." *Baggage Airline Guest Servs.*, 351 F. Supp. 3d at 758 (quotation omitted).

Exhibit B compares the independent claims of the Cache Patents, illustrating that they are substantially similar by color-coding similar limitations. *See PPS Data, LLC v. Jack Henry & Assocs., Inc.*, No. 2:18-cv-00007-JRG, 2019 WL 1317286, at *5 (E.D. Tex. Mar. 21, 2019) (articulating that defendants first bear the burden of demonstrating a claim is representative, which then shifts to the plaintiff to identify a difference material to the § 101 analysis). As Exhibit B shows, the independent claims recite the same idea of providing customized information to a user from the most convenient location. Although some claims recite additional or different steps, they are all substantially similar, if not identical, limitations linked to the same abstract idea. Claim 1 of the '854 Patent is thus representative, and all independent claims are invalid under *Alice*.

2. *Alice* **Step 1: The Cache Patents are directed to the abstract idea of providing customized information to a user *from the most convenient location*.**

The Cache Patents involve the same basic concepts as the '227 Patent (providing customized information to a user), but include additional claim limitations for "receiving a template program . . . from one of at least two locations" depending on "the frequency of the user request for the customized page." (*See* '854 Patent at Cl. 1.) Thus, the "focus" of Claim 1 is providing customized information to a user **from the most convenient location**. *See SAP*, 898 F.3d at 1167. The "template program" can be obtained either by creating the template on-the-fly, or, if previously created, from the "cache" within the "page server." (*See* '854 Patent at Cl. 1, 3:60–4:5, FIG. 2.) The specification explains that "user templates are stored in cache for long enough to be reused," but they can be "flushed" (deleted) if the user's template is edited or the account has been inactive. ('227 Patent at 4:40–52.)

As Magistrate Judge Burke has explained, "the idea of receiving a request for information and transmitting a response by **either recycling old information or collecting the requested information into a new file** that will be stored—in other words, a system meant to avoid reinventing the wheel every time a new request is received" is a "basic human function" and an abstract idea. *Versata*, 2015 WL 5768938, at \*21 (emphasis added) (recommending dismissal of claim asserting infringement of patent directed to "caching and retrieving cached dynamically generated files").[5] As in *Versata*, the '854 Patent specification describes its "two locations" as either a temporary cache (i.e., recycling old information) or a re-creation if not already available (i.e., creating a new file). As recognized in *Versata*, the practice of organizing and re-using records efficiently is simple records management done by any person. This is precisely what the '854 Patent claims, but in the context of a website. And any alleged benefits from the performance of the abstract idea, such as speed or efficiency, would directly relate to the very abstract idea of convenient data storage.

Importantly, the '854 Patent does not claim a new cache or improved method of data storage. To the contrary, it merely identifies a cache in general terms as part of the generic "page server" in Figure 2. (*See* '854 Patent at FIG. 2 ("page server" shown as 104); *see also id.* at 3:56–61, 4:1–2 (describing a generic "cache").) And it explains in general terms that the cache will store the template, which may be "flushed" depending on the circumstances. (*See id.* at 4:49–60.) The '854 Patent therefore describes a cache for what it is—a place to store frequently-accessed information. (*See id.*) Without so much as identifying a specific embodiment for a generic "cache," or describing any improvement in how a cache operates, Claim 1 is directed to an abstract idea.

---

[5] Similarly, storing information in multiple locations is an abstract idea. *See WhitServe*, 2019 WL 3342949, at \*5.

Judge Stark's prior *Quotient* opinion does not address the abstract idea presented here. As noted above, Judge Stark held that "providing targeted information, including advertising to a user" did not properly reflect the claims of the '854 Patent. *Quotient*, 2019 WL 2904670, at *2. In holding that the asserted abstract idea missed the mark, Judge Stark noted that "it may be possible that **Claim 1 could be accurately characterized as directed to some abstract idea**." *Id.* (emphasis added). Albertsons has done that by identifying the abstract idea that addresses the claim as a whole. Although Judge Stark stated that "the invention is changing the computer functionality to improve the efficiency of the technological process that was already using a computer," *see id.*, Albertsons submits that that is not the case when considered in the context of the properly-framed abstract idea, which is tied to an ordinary business practice and matches ideas found ineligible by this Court and the Federal Circuit.

Further, a finding that the generic cache preserves eligibility would run contrary to recent Federal Circuit precedent that improving the ability to store advertising "merely improves the abstract concept of delivering targeted advertising" and is "not what the Supreme Court meant by improving the functioning of the computer itself." *Customedia*, 951 F.3d at 1363. Reciting the idea of obtaining information from the most convenient location does not remove the claims from the realm of the abstract. Representative Claim 1 of the '854 Patent thus claims an abstract idea.

### 3. *Alice* Step 2: The Cache Patents do not contain an inventive concept sufficient to confer patent eligibility.

With respect to step two of the Alice analysis, Claim 1 does not include an "inventive concept." The proper question at this stage is whether the claims merely invoke "already-available computers," and if so, whether their use is "plausibly asserted to be an advance." *See id.* at 1366 (emphasis added) (finding that recitation of a conventional receiver was insufficient to provide an inventive concept). Indeed, in *Versata*, this Court rejected an argument that generic statements in

the specification attributing improvements in website operation **to a dynamic webpage caching system** demonstrated that there was an improvement to computer functionality because the **claim language** failed to address "the inventive use of the computer." *Versata*, 2015 WL 5768938, at *22 (quotation omitted).

There is no "plausible assertion" found anywhere in Claim 1 (or in the '854 Patent's specification) indicating that any non-generic computing elements are used or that their function is in any way modified. *See Customedia*, 951 F.3d at 1366. Claim 1 of the '854 Patent does not recite specific computing elements and generically recites receiving a template program "from one of at least two locations, the location determined from the frequency of the user request for the customized page." ('854 Patent at Cl. 1.) This is simply the abstract idea as carried out in any business that presents customized information. The claimed use of "[s]uch generic and functional hardware is insufficient to render" the claim patent-eligible. *Customedia*, 951 F.3d at 1366.

Albertsons submits that the *Quotient* decision does not require a finding in this case that Claim 1's limitations "transform" the claims. The record here is different. Judge Stark was not presented with the properly-framed abstract idea, which addresses the basic data organization practice of convenient data retrieval. Albertsons also submits that Claim 1's limitations do not change the computer functionality. As the Federal Circuit recently underscored, step two "more precisely" requires analysis of "what the claim elements add." *Customedia*, 951 F.3d at 1365. Claim 1 merely recites the use of generic steps carried out using "generic computer components." *See id.* at 1366. Failing to "plausibly assert an advance" in the use of "already-available computers," Claim 1 of the '854 Patent lacks an inventive concept. *Id.* The Court should therefore dismiss Digi Portal's infringement allegations as to all of the Cache Patents.

### 4. The Cache Patent's dependent claims add nothing inventive.

The dependent claims of the Cache Patents add inconsequential features: specifying categories of user preference or user demographic information (*see, e.g.*, '854 Patent at cls. 2–4, 9–11; '414 Patent at cls. 3, 7–9, 17–19; '359 Patent at cls. 5–7, 15–17), classifying an advertisement based on targeted demographic information (*see, e.g.*, '854 Patent at cls. 5, 12; '342 Patent at cls. 7, 8, 15, 16, 23, 24), specifying categories of real-time information (*see, e.g.*, '854 Patent at cls. 6, 7, 13, 14; '414 Patent at cls. 6, 16; '359 Patent at cls. 4, 14), expressly claiming shared memory and/or storing real-time data in shared memory (*see, e.g.*, '854 Patent at cls. 16, 17), expressly claiming cache, caching, reading cache, and flushing cache (*see, e.g.*, '414 Patent at cls. 2, 12, 20–23; '359 Patent at cls. 2, 8, 9, 11, 18, 19; '342 Patent at cls. 2–6, 10–14, 18–22), and the previously discussed steps of combining information into a template and/or sending/receiving it (*see, e.g.*, '414 Patent at cls. 4, 5, 13–15; '359 Patent at cls. 3, 12, 13). These claims are all directed to the abstract idea of providing customized information from the most convenient location or merely claiming the results of using "computers as tools," and therefore do not confer patent eligibility. *Customedia*, 951 F.3d at 1363. All claims of the Asserted Patents fail both prongs of *Alice* and are ineligible.

## VI.   CONCLUSION

For the foregoing reasons, Albertsons respectfully requests that the Court dismiss Digi Portal's Complaint for failure to state a claim upon which relief can be granted.

Dated:  December 17, 2020

Respectfully submitted,

FISH & RICHARDSON P.C.

By: */s/ Jeremy D. Anderson*
    Jeremy D. Anderson (#4515)
    222 Delaware Ave., 17th Floor
    P.O. Box 1114
    Wilmington, DE 19801
    (302) 652-5070 (Telephone)
    (302) 652-0607 (Facsimile)
    janderson@fr.com

    Neil J. McNabnay, *pro hac vice* to be filed
    Ricardo J. Bonilla, *pro hac vice* to be filed
    Collin J. Marshall, *pro hac vice* to be filed
    1717 Main Street, Suite 5000
    Dallas, TX 75201
    (214) 747-5070 (Telephone)
    (214) 747-2091 (Facsimile)
    mcnabnay@fr.com
    rbonilla@fr.com
    cmarshall@fr.com

    **COUNSEL FOR DEFENDANT**
    **ALBERTSONS COMPANIES, INC.**